**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| SHERYL SIMON,<br>on behalf of herself and a class, | )<br>)<br>) |
| Plaintiff, | )<br>) |
| v. | )<br>) |
| CARDTRONICS USA, INC.<br>and DOES 1-5, | )<br>)<br>) |
| Defendants. | )<br>) |

## COMPLAINT – CLASS ACTION

### INTRODUCTION

1.      Plaintiff Sheryl Simon brings this action to secure redress for defendant's violations of the Electronic Funds Transfer Act, 15 U.S.C. §1693 et seq. ("EFTA"), and implementing Federal Reserve Board Regulation E, 12 C.F.R. part 205.

### JURISDICTION AND VENUE

2.      This Court has jurisdiction under 28 U.S.C. §§1331 and 1337 and 15 U.S.C. §1693m (EFTA).

3.      Venue in this District is proper in that defendant does business in this District and the events complained of occurred in this District.

### PARTIES

4.      Plaintiff Sheryl Simon is an individual who resides in the Northern District of Illinois.

5.      Defendant Cardtronics USA, Inc. ("Cardtronics"), is a Delaware corporation. Its registered agent and officer is Illinois Corporation Service, 801 Adlai Stevenson Drive, Springfield, Illinois 62703.

6.      Defendant operates an automated teller machine ("ATM") at 330 W. Diversey Parkway, Chicago, Illinois 60657.

7.      Defendants Does 1-5 are any other entities or persons responsible for the operation of the ATM at the above location.

## FACTS

8.      Within one year prior to the filing of this action, plaintiff conducted an electronic funds transfer at the ATM operated by defendant at 330 W. Diversey Pkwy., Chicago, Illinois 60657.

9.      Any transaction carried out through an ATM is governed by EFTA.  The EFTA, 15 U.S.C. §1693a, provides:

> **. . . (6) the term "electronic fund transfer" means any transfer of funds, other than a transaction originated by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, or computer or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller machine transactions . . . .**

10.     Plaintiff was charged a fee by the ATM.  A redacted copy of the receipt issued to plaintiff is attached as Exhibit A.

11.     The ATM bore the logo of Mastercard ATM Alliance.  A photograph of the ATM is attached as Exhibit B.

12.     The logo is displayed to identify ATMs where no fee will be charged to customers of Ameriprise Bank, FSB and certain other members of the Mastercard ATM Alliance. See Exhibit C.

13.     Plaintiff was a customer of Ameriprise Bank, FSB, and therefore was entitled not to be charged a fee by the ATM.

## VIOLATION ALLEGED

14.     Defendant misrepresented that certain customers would not be required to pay a fee for using the ATM, and then charged a fee for using the ATM.

15.     The EFTA, 15 U.S.C. §1693b, provides:

**Regulations**

**(a) Prescription by Board.  The Board shall prescribe regulations to carry out**

the purposes of this title *[15 USCS § § 1693 et seq.]*. . . .

**(d) Applicability to service providers other than certain financial institutions.**

    **(1) In general.  If electronic fund transfer services are made available to consumers by a person other than a financial institution holding a consumer's account, the Board shall by regulation assure that the disclosures, protections, responsibilities, and remedies created by this title *[15 USCS § § 1693 et seq.]* are made applicable to such persons and services. . . .**

    **(3) Fee disclosures at automated teller machines.**

        **(A) In general. The regulations prescribed under paragraph (1) shall require any automated teller machine operator who imposes a fee on any consumer for providing host transfer services to such consumer to provide notice in accordance with subparagraph (B) to the consumer (at the time the service is provided) of –**

            **(i) the fact that a fee is imposed by such operator for providing the service; and**

            **(ii) the amount of any such fee.**

        **(B) Notice requirements.**

            **(i) On the machine. The notice required under clause (i) of subparagraph (A) with respect to any fee described in such subparagraph shall be posted in a prominent and conspicuous location on or at the automated teller machine at which the electronic fund transfer is initiated by the consumer.**

            **(ii) On the screen. The notice required under clauses (i) and (ii) of subparagraph (A) with respect to any fee described in such subparagraph shall appear on the screen of the automated teller machine, or on a paper notice issued from such machine, after the transaction is initiated and before the consumer is irrevocably committed to completing the transaction, except that during the period beginning on the date of the enactment of the Gramm-Leach-Bliley Act [enacted Nov. 12, 1999] and ending on December 31, 2004, this clause shall not apply to any automated teller machine that lacks the technical capability to disclose the notice on the screen or to issue a paper notice after the transaction is initiated and before the consumer is irrevocably committed to completing the transaction.**

        **(C) Prohibition on fees not properly disclosed and explicitly assumed by consumer. No fee may be imposed by any**

automated teller machine operator in connection with any electronic fund transfer initiated by a consumer for which a notice is required under subparagraph (A), unless–

(i) the consumer receives such notice in accordance with subparagraph (B); and

(ii) the consumer elects to continue in the manner necessary to effect the transaction after receiving such notice.

(D) Definitions. For purposes of this paragraph, the following definitions shall apply:

(i) Automated teller machine operator. The term "automated teller machine operator" means any person who–

(I) operates an automated teller machine at which consumers initiate electronic fund transfers; and

(II) is not the financial institution that holds the account of such consumer from which the transfer is made.

(ii) Electronic fund transfer. The term "electronic fund transfer" includes a transaction that involves a balance inquiry initiated by a consumer in the same manner as an electronic fund transfer, whether or not the consumer initiates a transfer of funds in the course of the transaction.

(iii) Host transfer services. The term "host transfer services" means any electronic fund transfer made by an automated teller machine operator in connection with a transaction initiated by a consumer at an automated teller machine operated by such operator.

16.    Regulation E, 12 C.F.R. § 205.16, provides:

**Disclosures at automated teller machines.**

   **(a) Definition. Automated teller machine operator means any person that operates an automated teller machine at which a consumer initiates an electronic fund transfer or a balance inquiry and that does not hold the account to or from which the transfer is made, or about which an inquiry is made.**

**(b) General. An automated teller machine operator that imposes a fee on a consumer for initiating an electronic fund transfer or a balance inquiry shall:**

**(1) Provide notice that a fee will be imposed for providing electronic fund transfer services or a balance inquiry; and**

**(2) Disclose the amount of the fee.**

**(c) Notice requirement. To meet the requirements of paragraph (b) of this section, an automated teller machine operator must comply with the following:**

**(1) On the machine. Post in a prominent and conspicuous location on or at the automated teller machine a notice that:**

**(i) A fee will be imposed for providing electronic fund transfer services or for a balance inquiry; or**
**(ii) A fee may be imposed for providing electronic fund transfer services or for a balance inquiry, but the notice in this paragraph (c)(1)(ii) may be substituted for the notice in paragraph (c)(1)(i) only if there are circumstances under which a fee will not be imposed for such services; and**

**(2) Screen or paper notice. Provide the notice required by paragraphs (b)(1) and (b)(2) of this section either by showing it on the screen of the automated teller machine or by providing it on paper, before the consumer is committed to paying a fee. . . .**

**(e) Imposition of fee. An automated teller machine operator may impose a fee on a consumer for initiating an electronic fund transfer or a balance inquiry only if**

**(1) The consumer is provided the notices required under paragraph (c) of this section, and**

**(2) The consumer elects to continue the transaction or inquiry after receiving such notices.**

17.     The EFTA, 15 U.S.C. §1693m, provides:

**Civil liability**

**(a) Individual or class action for damages; amount of award.  Except as otherwise provided by this section and section 910 *[15 USCS § 1693h]*, any person who fails to comply with any provision of this title *[15 USCS § § 1693 et seq.]* with respect to any consumer, except for an error resolved in accordance with section 908 *[15 USCS § 1693f],* is liable to such consumer in an amount equal to the sum of--**

**(1) any actual damage sustained by such consumer as a result of such failure;**

**(2) (A) in the case of an individual action, an amount not less than $ 100 nor greater than $ 1,000; or**

**(B) in the case of a class action, such amount as the court**

**may allow, except that (i) as to each member of the class no minimum recovery shall be applicable, and (ii) the total recovery under this subparagraph in any class action or series of class actions arising out of the same failure to comply by the same person shall not be more than the lesser of $ 500,000 or 1 per centum of the net worth of the defendant; and**

**(3) in the case of any successful action to enforce the foregoing liability, the costs of the action, together with a reasonable attorney's fee as determined by the court.**

**(b) Factors determining amount of award.  In determining the amount of liability in any action under subsection (a), the court shall consider, among other relevant factors--**

**(1) in any individual action under subsection (a)(2)(A), the frequency and persistence of noncompliance, the nature of such noncompliance, and the extent to which the noncompliance was intentional; or**

**(2) in any class action under subsection (a)(2)(B), the frequency and persistence of noncompliance, the nature of such noncompliance, the resources of the defendant, the number of persons adversely affected, and the extent to which the noncompliance was intentional.**

**. . . (g) Jurisdiction of courts; time for maintenance of action.  Without regard to the amount in controversy, any action under this section may be brought in any United States district court, or in any other court of competent jurisdiction, within one year from the date of the occurrence of the violation.**

## CLASS ALLEGATIONS

18.     This claim is brought on behalf of a class, consisting of (a) all persons who used an ATM displaying the Mastercard ATM Alliance logo (b) and were customers of a bank within the Mastercard ATM Alliance (c) and were charged a fee by Defendant (d) during a period beginning one year prior to the filing of this action and ending 20 days after the filing of this action.

19.     The class is so numerous that joinder of all members is impracticable.

20.     On information and belief, there are more than 50 (a) persons who used an ATM displaying the Mastercard ATM Alliance logo (b) and were customers of a bank within the Mastercard ATM Alliance (c) and were charged a fee by Defendant (d) during a period beginning one year prior to the filing of this action and ending 20 days after the filing of this

6

action.

21.     There are questions of law and fact common to the class, which questions predominate over any questions affecting only individual class members.  The predominant common question is whether defendant's ATMs were posted with a misleading notice.

22.     Plaintiff's claims are typical of the claims of the class members.  All are based on the same legal and factual issues.

23.     Plaintiff will fairly and adequately represent the members of the class. Plaintiff has retained counsel experienced in the prosecution of consumer credit claims and class actions.

24.     A class action is superior for the fair and efficient prosecution of this litigation.  Classwide liability is essential to cause defendant to stop its improper conduct.  Many class members may be unaware that they have been victims of illegal conduct.

WHEREFORE, plaintiff requests that the Court enter judgment in plaintiff's favor and in favor of the class for:

a.     Appropriate statutory and actual damages;

b.     Attorney's fees, litigation expenses and costs of suit;

c.     Such other or further relief as is appropriate.

s/Daniel A. Edelman
Daniel A. Edelman

Daniel A. Edelman
Cathleen M. Combs
James O. Latturner
Tiffany N. Hardy
EDELMAN, COMBS, LATTURNER
        & GOODWIN, LLC
120 S. LaSalle Street, 18th Floor
Chicago, Illinois  60603
(312) 739-4200
(312) 419-0379 (FAX)

7

## <u>NOTICE OF LIEN AND ASSIGNMENT</u>

Please be advised that we claim a lien upon any recovery herein for 1/3 or such amount as a court awards.   All rights relating to attorney's fees have been assigned to counsel.


<u>s/Daniel A. Edelman</u>
Daniel A. Edelman


Daniel A. Edelman
EDELMAN, COMBS, LATTURNER
      & GOODWIN, LLC
120 S. LaSalle Street, 18th Floor
Chicago, Illinois  60603
(312) 739-4200
(312) 419-0379 (FAX)

T:\25209\_.wpd

8

# EXHIBIT A

```
DIVERSEY DELI
330 W DIVERSEY AVE
CHICAGO IL 60657
(773)528 5111

TERMINAL #       = CR003961
SEQUENCE #       = 4360
AUTH.    #       = 001356  30
DATE             = 12/28/2010
TIME             = 10:09:09
BUSINESS DATE    = 12/28/10

CARD NUMBER
██████████████
DISPENSED AMOUNT =      $200.00
REQUESTED AMOUNT =      $200.00
from CHECKING
TERMINAL FEE     =        $2.00
TOTAL AMOUNT     =      $202.00
BALANCE          = $
TERMINAL FEE PAID TO:
CARDTRONICS
```

Redacted

# EXHIBIT B



EXHIBIT C



# ATM Finder

## Look for ATMs that accept your Ameriprise Debit MasterCard®

The Ameriprise Debit MasterCard card is accepted at over 25 million locations worldwide including stores, restaurants and hotels. You can also access more than a million ATMs in over 210 countries as well as surcharge free ATM networks at over 21,000 ATM locations nationwide.

Find ATMs that accept the Ameriprise Debit MasterCard
(http://www.mastercard.com/ATMLocatorWeb/home.do)

You can use your Ameriprise Debit MasterCard at merchants and ATM network machines that display the following symbols. Additionally, there is no charge for making cash withdrawals at ATM locations that bear the MasterCard® ATM Alliance logo.

   

ATMs not participating in the MasterCard ATM Alliance network may assess surcharges.

**Please note: At this time, we do not accept deposits at our ATMs.**

The Ameriprise Debit MasterCard is issued by Ameriprise Bank, FSB pursuant to a license from MasterCard International Incorporated. MasterCard is a registered trademark of MasterCard International Incorporated. Maestro is a registered trademark of MasterCard International Incorporated and affiliates. Cirrus is a registered trademark of Cirrus System, LLC, formerly known as Cirrus System, Inc.

The Ameriprise Debit MasterCard is offered on certain deposit products and on the *Ameriprise ONE*® Financial Account. The *Ameriprise ONE* Financial Account is a brokerage account.

Brokerage, investment and financial advisory services are made available through Ameriprise Financial Services, Inc. Member FINRA and SIPC. Some products and services may not be available in all jurisdictions or to all clients.

Ameriprise Bank, FSB, Member FDIC is an equal Housing Lender. Ameriprise Bank provides certain deposit, lending and personal trust products and services to Ameriprise Financial Services, Inc. Ameriprise Bank and Ameriprise Financial Services are subsidiaries of Ameriprise Financial, Inc. Deposit products are FDIC insured to at least $100,000 per depositor.

**Investment products provided through Ameriprise Financial are not federally or FDIC insured, are not deposits or obligations of, or guaranteed by, any financial institution, and involve investment risks, including possible loss of principal and fluctuation in value.**

www.mastercard.com/interactivelocate

Start New Search      Jump to Results      Print Page



**Your search resulted in 2367 locations. 100 locations displayed.**

UNITED STATES

Address (Optional)          City                    State
330 west diversey           chicago                 ILLINOIS

Postal Code
                            Features

Map Information

View Results:  1 - 10          Financial Institutions:  All

Next >>

| | Location | Distance | Type | Features | Send To: |
|---|---|---|---|---|---|
| 1. | **DIVERSEY DELI**<br>330 W Diversey Pkwy<br>Chicago, IL 60657<br><br>Owned By:<br>CARDTRONICS | 0.0 miles<br>Directions | Restaurant | | |
| 2. | **GRILL IN THE PARK**<br>248 W Diversey Pkwy<br>Chicago, IL 60657<br><br>Owned By: PAI ATM<br>STRATEGIES. LLC (ATM E | 0.06 miles<br>Directions | Restaurant | ⏱ | |

www.mastercard.com/interactivelocator

| | | | | | |
|---|---|---|---|---|---|
| 3. | **2800 LAKE SHORE CONDOMINIUM GARAGE**<br>2800 N Lake Shore DR<br>Chicago, IL 60657<br><br>Owned By: ATM CASH NOW | 0.08 miles<br><u>Directions</u> | 2800 LAKE SHORE CONDOMINI GARAGE | ♿ | |
| 4. | **BRANCH NAME**<br>2800 N Sheridan RD<br>Chicago, IL 60657<br><br>Owned By: ST JOSEPH HOSP | 0.09 miles<br><u>Directions</u> | Financial Institution | | |
| 5. | **CONVENIENT FOOD MART- 2850 SHERIDAN**<br>2850 N Sheridan RD<br>Chicago, IL 60657<br><br>Owned By: ACCESS SOLUTIONS | 0.12 miles<br><u>Directions</u> | Restaurant | | |
| 6. | **DUFFYS**<br>420 W Diversey Pkwy<br>Chicago, IL 60614<br><br>Owned By: PAI ATM STRATEGIES. LLC (ATM E | 0.12 miles<br><u>Directions</u> | Restaurant | 🕐 | |
| 7. | **440 WEST DIVERSEY**<br>440 W Diversey Pkwy<br>Chicago, IL 60614<br><br>Owned By: BANK OF AMERICA | 0.15 miles<br><u>Directions</u> | URBAN RETAIL | 🕐 | |
| 8. | **ST JOSEPH HOSPITAL**<br>2900 N Lake Shore DR<br>Chicago, IL 60657<br><br>Owned By: BANK OF AMERICA | 0.16 miles<br><u>Directions</u> | Hospital | 🕐 | |

| | | | | |
|---|---|---|---|---|
| 9. | **WHITE HEN PANTRY**<br>2757 N Pine Grove Ave<br>Chicago, IL 60614<br><br>Owned By: CITIZENS<br>BANK OF RHODE ISLAND | 0.17 miles<br>Directions | Other | 🕐 |
| 10. | **EAST GATE LIQUORS**<br>446 W Diversey Pkwy<br>Chicago, IL 60614<br><br>Owned By: AUTOMATED<br>SYSTEMS AMERICA, INC | 0.17 miles<br>Directions | Super<br>Market | 🕐 |

**Next >>**

View Results: [ 1 - 10 ▾ ]    Financial Institutions: [ All ▾ ]

| 🚗 | 🕐 | ♿ | 🚫 | ⬆ | 💵 💳 |
|---|---|---|---|---|---|
| Drive Up | 24 Hour | Wheelchair<br>Accessible | No Access<br>Fee (within<br>country) | Deposit<br>Sharing | Surcharge<br>Free Alliance |